The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROSS WHEELER and OSCAR SKJERVEN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

WYZE LABS, INC.,

Defendant.

Case No. 2:26-cv-01319-JNW

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'CLASS ACTION COMPLAINT**



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

## TABLE OF CONTENTS


INTRODUCTION ........................................................ 1

BACKGROUND ........................................................ 1

I. Wyze Told Website Visitors That They Could Refuse Tracking........................ 1

II. Wyze Tracked Visitors Before They Could Consent and Kept Tracking After They Refused Consent ........................................................ 2

III. The Tracking Tools Intercepted the Contents of Visitors' Communications and Identified the Visitors Making Them ........................................................ 3

A. TikTok........................................................ 4

B. Facebook ........................................................ 4

C. Google........................................................ 5

D. Twitter and Snapchat ........................................................ 5

E. Bazaarvoice........................................................ 5

IV. The Tracking Entities Used Intercepted Communications for Their Own Commercial Purposes in Violation of State and Federal Law ........................................................ 6

V. Plaintiffs' Experiences........................................................ 6

LEGAL STANDARD ........................................................ 7

ARGUMENT ........................................................ 9

I. Plaintiffs Have Suffered Concrete Injuries, Establishing Article III Standing ............... 9

II. Plaintiffs Have Stated a Claim Under the Wiretap Act. ........................................ 11

A. Plaintiffs Have Alleged Unlawful Interception. ........................................ 11

B. Even If Wyze Was a Party to the Communications, Wyze Is Liable Under the Crime-Tort Exception. ........................................................ 11

C. Plaintiffs Have Alleged That Defendant Intercepted the Contents of Their Communications ........................................................ 13

III. Plaintiffs Have Stated Claims for Common Law Fraud........................................ 14




LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

A. Plaintiffs' Fraud Claims Are Pled with Sufficient Particularity ............................ 15

B. Plaintiffs Have Adequately Alleged Scienter ........................................................ 15

C. Plaintiffs Have Adequately Alleged Justifiable Reliance ...................................... 16

IV. Plaintiffs Have Stated Claims for Intrusion Upon Seclusion ......................................... 17

A. Plaintiffs Have Alleged That Defendant Intruded Upon Their Seclusion. ............. 17

CONCLUSION ........................................................................................................... 19



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

# TABLE OF AUTHORITIES

**Cases**

*Allison v. PHH Mortg.*,
No. 25-CV-05323-RFL, 2026 WL 899438 (N.D. Cal. Mar. 27, 2026) ................................ 12

*Armijo v. Yakima HMA, LLC*,
No. 11-CV-3114-TOR, 2012 WL 2576624 (E.D. Wash. July 3, 2012)................................ 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 7

*Correia v. Lulu*,
No. 3:26-cv-01186-GPC-JLB, 2026 WL 2343093 (S.D. Cal. Aug. 12, 2026) ........... 9, 10, 17

*D'Antonio v. Smith & Wesson Inc.*,
820 F. Supp. 3d 928 (N.D. Cal. 2026)................................................................... 15, 19

*Doe v. Lawrence Gen. Hosp.*,
No. 25-cv-10081-NMG, 2025 WL 2808055 (D. Mass. Aug. 29, 2025) ............................... 12

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .......................................................................................... 9

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025)........................................................... 9, 13, 16, 18

*Garcia v. Anschutz Ent. Grp., Inc.*,
No. 5:25-cv-02282-SSS-DTBx, 2026 U.S. Dist. LEXIS 101782 (C.D. Cal. May 5, 2026) .... 9

*Gilligan v. Experian Data Corp.*,
No. 25-CV-02873-RFL, 2026 WL 32259(N.D. Cal. Jan. 6, 2026)....................................... 18

*Haskins v. Symantec Corp.*,
654 F. Appx. 338 (9th Cir. 2016) ..................................................................................... 16

*In re Facebook Inc. Internet Tracking Litig.,*
956 F.3d 589 (9th Cir. 2020) ......................................................... 11, 13, 14, 17, 18

*In re Facebook Internet Tracking Litig.,*
140 F. Supp. 3d 922 (N.D. Cal. 2015)............................................................................ 14



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

*In re Otter.ai Priv. Litig.*,
No. 25-cv-06911-EKL, 2026 WL 2351237 N.D. Cal. Aug. 13, 2026) .......... 10, 12

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 14

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) .......... 12, 14

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .......... 8

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .......... 8

*Limas v. Wayfair LLC*,
No. CV 25-11185-DMG (Ex), 2026 WL 2351592 (C.D. Cal. Aug. 13, 2026) .......... 13, 14

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 8

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .......... 7

*Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*,
225 F. Supp. 3d 1034 (N.D. Cal. 2016) .......... 16

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......... 8, 10

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .......... 11

*Moore v. Kayport Package Express*,
885 F.2d 531 (9th Cir. 1989) .......... 8

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .......... 17

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) .......... 9

*Pemberton v. Rest. Brands Int'l, Inc.*,
No. 25-CV-03647-JSC, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) .......... 9, 15, 16

*Poore-Rando v. United States*,
No. C16-5094 BHS, 2017 WL 5756871 (W.D. Wash. Nov. 28, 2017) .......... 18



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ..... 10

*Revitch v. New Moosejaw, LLC*,
No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ..... 18

*Reynolds v. Spears*,
93 F.3d 428 (8th Cir. 1996) ..... 11

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ..... 12

*Roney v. Miller*,
705 F. Appx. 670 (9th Cir. 2017) ..... 19

*Saeedy v. Microsoft Corp.*,
No. 23-cv-1104, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ..... 19

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ..... 8

*Shah v. MyFitnessPal, Inc.*,
824 F. Supp. 3d 906 (N.D. Cal. 2026) ..... 9, 10, 14, 17

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-06709-RFL, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ..... 13

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ..... 8

*Sussman v. ABC,*
186 F.3d 1200 (9th Cir. 1999) ..... 12

*United States v. Cassiere*,
4 F.3d 1006 (1st Cir. 1993) ..... 13

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014) ..... 12

*United States v. Vest*,
813 F.2d 477 (1st Cir. 1987) ..... 13

*Usher v. Los Angeles*,
828 F.2d 556 (9th Cir. 1987) ..... 7

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ..... 8, 14



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

*Vishal Shah v. Politico LLC,*
No. 25-cv-05213-NW, 2026 WL 323269 (N.D. Cal. Feb. 6, 2026)............................ 9, 10, 17

*Wiley*, 826 F. Supp. 3d 1121 (N.D. Cal. 2025)................................................................... 10, 14

**Statutes**

18 U.S.C. § 2511(2)(d) ........................................................................................................ 11

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................................ 8

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 7, 8

Fed. R. Civ. P. 15(a)(2) ........................................................................................................ 9

Fed. R. Civ. P. 9(b)........................................................................................................ 8, 14



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

## INTRODUCTION

Defendant Wyze Labs, Inc. ("Wyze") describes this case as one about "routine website visits." Def.'s Mot. at 1 (ECF No. 18). The Complaint alleges something different: that Wyze designed a website that deployed a cookie banner and preferences interface informing visitors that they could refuse tracking and prevent the sale or sharing of their personal data, but deployed tracking software that began transmitting visitors' communications to third parties before the banner could even be read and kept transmitting data after visitors affirmatively rejected consent. Compl. ¶¶ 3–4, 44-48, 49, 51, 197-202 (ECF No. 1).

Based on the foregoing, Plaintiffs now allege that Wyze violated the federal Wiretap Act, 18 U.S.C. § 2510, et seq., and common law, including intrusion upon seclusion, fraud and deceit, and unjust enrichment.[1]

Wyze now moves to dismiss the Complaint, arguing, *inter alia*, that Plaintiffs lack standing, that Plaintiffs have failed to plead a highly offensive intrusion and a reasonable expectation of privacy, and that Plaintiffs' Wiretap claim fails for particularity of pleading that the contents of Plaintiffs' communications were intercepted in transit. In each respect, Wyze's arguments fail to take into account a plethora of case law undermining its position and/or ignore the well-pled allegations in the Complaint. Thus, for the reasons explained herein, Wyze's Motion should be denied.

## BACKGROUND

### I. Wyze Told Website Visitors That They Could Refuse Tracking

Wyze operates www.wyze.com (the "Website"), a direct-to-consumer platform where visitors browse and purchase Wyze's smart-home products, create and manage accounts, and access product support. Compl. ¶¶ 2, 14, 38. When a visitor arrives, the Website displays a pop-

[1] Plaintiffs' Complaint asserts seven total causes of action under state and federal law. Plaintiffs concede that Plaintiff Skjerven is bound by a choice-of-law provision selecting Washington law. Therefore, Plaintiffs voluntarily withdraw Counts II (CIPA), III (CIPA), VI (CLRA), and VII (UCL) without prejudice.



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363-7500 • FAX (212) 363-7171

up cookie banner stating that the Website uses cookies from Wyze and third parties for performance, advertising, and marketing purposes, and offering the visitor three options: accept cookies, decline cookies, or "Manage Preferences." Compl. ¶ 44, *Fig. 7*. Selecting "Manage Preferences" opens a cookie preferences interface ("Cookie Preferences Interface") stating that visitors can disable personalization, advertising, and analytics cookies. Compl. ¶ 45. Through that interface, Wyze represented that visitors could disable every cookie not necessary for the Website to function and could choose not to share details of their visits with third parties, including by toggling off the "selling" of visitor information and targeted advertising. Compl. ¶¶ 2, 46, *Fig. 8*.

Wyze's consent banner reinforced the point, telling visitors: "You can opt out of disclosures of your data for targeted advertising and similar purposes by visiting our Privacy Policy." Compl. ¶ 41. The Privacy Policy, in turn, disclosed that advertising partners "may use cookies, web beacons, SDKs, device identifiers, and other technologies" to collect visitors' IP addresses, pages viewed, links clicked, and conversion information for targeted advertising, and that third parties may associate that information with data they already hold—including email addresses—to build user profiles. Compl. ¶¶ 42–43. After a visitor declined all non-essential cookies and clicked "Save my choices," or simply selected "Decline," the banner and preferences window disappeared, and the visitor continued browsing. Compl. ¶ 47. Wyze's interface thus led visitors to believe they had disabled non-essential cookies and the sale or sharing of their information, and that Wyze would not permit third parties to access their information going forward. Compl. ¶ 48.

## II. Wyze Tracked Visitors Before They Could Consent and Kept Tracking After They Refused Consent

These representations were false. Compl. ¶ 51. Wyze voluntarily embedded software (the "Tracking Tools") from third-party "Tracking Entities"—including TikTok, Facebook (Meta), Google, Twitter, Snapchat, Microsoft, and Bazaarvoice—into the Website's code pursuant to



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

commercial agreements with those entities. Compl. ¶¶ 4, 32, 49. Wyze controls the Website's code, determines which Tracking Tools load, decides whether cookies are placed on visitors' devices and whether visitor data is transmitted, and specifies how much data the Tracking Entities collect and in what detail. Compl. ¶¶ 39, 60.

As Wyze configured it, the Website deployed Tracking Tools from Bazaarvoice, Google, Facebook, Twitter, Microsoft, and Snapchat by default—the moment a visitor landed, and before they had any opportunity to read or act on the cookie banner. Compl. ¶¶ 4, 49, 197–98. For visitors who then expressly declined all non-essential cookies and opted out of the sale or sharing of their information, the Microsoft and Bazaarvoice Tracking Tools kept operating anyway. Compl. ¶¶ 49, 51. Network-traffic logs captured with standard browser developer tools show visitors' browsers continuing to send HTTP requests carrying non-essential tracking cookies to Bazaarvoice after the visitor rejected cookies and opted out. Compl. ¶¶ 52–54 & *Figs. 9–12*; *see also* Compl. ¶ 201. This pre- and post-rejection tracking operated uniformly across all states, even though Wyze's own Privacy Policy acknowledged that visitors in sixteen states, including Oregon and California, hold state-specific privacy rights. Compl. ¶ 50.

Wyze's conduct changed only recently. Between February 6 and February 17, 2026, reconfigured the Website and removed previously operational Tracking Tools. Compl. ¶ 57. Within a week, the Microsoft and Bazaarvoice tools resumed operating after cookie rejection for visitors in some states, including New York—but not for visitors in California, a distinction corresponding to the state-specific privacy protections referenced in Wyze's own Privacy Policy. Compl. ¶ 58.

## III. The Tracking Tools Intercepted the Contents of Visitors' Communications and Identified the Visitors Making Them

The Tracking Tools capture visitors' communications with the Website as they happen. Operating inside the visitor's browser, they duplicate and transmit both incoming and outgoing requests contemporaneously, before the communications reach their intended destination.



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363-7500 • FAX (212) 363-7171

Compl. ¶¶ 31, 189–90. What they capture is not limited to routing data. The Tracking Tools record visitors' selections of links, buttons, forms, and other on-page elements; information entered into search fields; the webpages and products viewed or purchased; inferred interests, preferences, age, and location; device and technical identifiers; persistent identifiers that recognize visitors across sessions and websites; email addresses; and approximate geolocation derived from IP addresses (collectively, "Sensitive Information"). Compl. ¶¶ 5, 36. The intercepted network requests included Request URLs identifying the specific webpages visitors viewed. Compl. ¶ 188.

The Complaint documents each tool's operation on the Website itself, with screenshots of Wyze's live code and outbound transmissions:

**A. TikTok**

Wyze's TikTok Pixel, bearing Wyze's unique Pixel ID, begins collecting information "the moment a visitor lands on the Website, before any pop-up or cookie banner" appears. Compl. ¶¶ 63–64 & *Figs. 15–16*. It transmits to TikTok the actions visitors take (button clicks, add-to-cart events, purchases), the time of each action, IP address (used to locate the visitor geographically), device information, identifying cookies, and metadata, both as communications arrive at and leave the visitor's browser. Compl. ¶¶ 65–67, 72. Through TikTok's "Advanced Matching," TikTok matches visitors' contact information, such as email addresses and phone numbers, with their on-site actions and links the data to individual TikTok accounts, enabling real-time monitoring of identified visitors. Compl. ¶¶ 69–71, 81.

**B. Facebook**

Wyze deployed the Facebook Pixel under three Wyze-specific Pixel IDs, using the "PageView" and "ViewContent" events to report visitors' page and product views to Facebook from the moment a visitor lands. Compl. ¶¶ 93, 97–98 & *Figs. 21–22*. Facebook's cookies, including the c_visitor cookie containing the visitor's Facebook ID, let Facebook tie that browsing data to the visitor's individual Facebook account: appending the ID transmitted in the



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

cookie to facebook.com resolves directly to the visitor's personal profile. Compl. ¶¶ 94–96 & Figs. 19–20. Wyze specifically chose the pixel implementation that transmits visitors' information unencrypted, rather than Facebook's alternative that encrypts it automatically. Compl. ¶ 106 & n.56.

### C. Google

Wyze's Google integrations intercepted visitors' viewing activity and shared it with Google Ads, Compl. ¶ 115 & *Fig. 23*, while Google Analytics captured link and button clicks, form submissions, and shopping-cart activity. Compl. ¶¶ 120, 123 & *Fig. 24*.

### D. Twitter and Snapchat

The Twitter Pixel on the Website tracks events including use of the search bar, purchases, and cart additions, with parameters that can include the visitor's search terms and email address; it begins collecting visitors' cookie IDs immediately to match them to Twitter accounts, and transmits to Twitter the instant a visitor loads a page. Compl. ¶¶ 128–30, 133 & *Fig. 25*. The Snap Pixel likewise collects immediately upon landing—capturing action timestamps, device information, cookies, button clicks, and IP addresses, and enabling cross-device tracking—yet its functionality "is not disclosed on the Website." Compl. ¶¶ 146–48, 160 & *Fig. 26.*

### E. Bazaarvoice

The Bazaarvoice pixel captures product purchases, review interactions, and visits to pages containing review content, and, when configured to do so, transmits personally identifiable information, including the visitor's email address, nickname, and user ID. Compl. ¶¶ 168–69. Wyze placed Bazaarvoice's BVBRANDID identifying cookie—which persists for a full year—on visitors' devices. Compl. ¶¶ 170–71, 175–76 & *Fig. 29*, even though Bazaarvoice instructs website operators that these cookies "can only be set if the site visitor has given consent through a cookie consent panel." Compl. ¶ 172. Bazaarvoice's tracking demonstrably continued after visitors declined all non-essential cookies. Compl. ¶¶ 54, 201.



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

## IV. The Tracking Entities Used Intercepted Communications for Their Own Commercial Purposes in Violation of State and Federal Law

The Tracking Entities "do not operate as passive tools of the Defendant. They collect and use the intercepted communications for their own commercial purposes as well as for the benefit of the Defendant." Compl. ¶ 56. Each entity correlates intercepted Website activity with data it already holds to compile cross-site profiles of visitors' behaviors, demographics, and inferred characteristics. Compl. ¶¶ 55, 203. For example, TikTok uses the data to improve its own products and to generate benchmarking reports sold to other TikTok business customers. Compl. ¶ 75. Facebook uses it to refine its advertising algorithms and sell targeted-advertising services. Compl. ¶ 100. Google aggregates the viewing data to train its algorithms, build advertising profiles, and drive its keyword-auction revenue. Compl. ¶¶ 117–19. Snapchat benefits independently from the audience data it receives. Compl. ¶¶ 152, 204.

Wyze deployed these tools with its eyes open. Each Tracking Entity's terms of service (to which Wyze agreed) required Wyze to provide legally sufficient notice to its visitors and to obtain the necessary rights, permissions, and consents before sharing their information. Compl. ¶¶ 82, 108, 136–37, 163. TikTok's and Snapchat's terms further prohibited sharing sensitive or special-category data at all. Compl. ¶¶ 83, 162. Wyze proceeded anyway, without obtaining visitors' consent, and contrary to the choices visitors affirmatively expressed. Compl. ¶¶ 84–85, 109, 139, 164, 181, 183, 195.

## V. Plaintiffs' Experiences

Plaintiff Ross Wheeler, an Oregon citizen, visited the Website in or about November 2025 while physically located in Oregon. Compl. ¶ 12. Consistent with his practice of refusing online tracking technologies, Wheeler expressly declined the Website's cookie banner. *Id.* Despite that election, and without his knowledge or informed consent, Wyze's Tracking Tools continued to capture, duplicate, and transmit his communications with the Website, and the Tracking Entities intercepted, collected, and used his Sensitive Information. *Id.*



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

Plaintiff Oscar Skjerven, a California citizen and a years-long user of Wyze's cameras and mobile application, visited the Website in or about November 2025 while physically located in California, viewing sales information and documentation for cameras he already owns. Compl. ¶ 13. He too expressly declined the cookie banner, and he too was tracked anyway: Wyze's Tracking Tools continued capturing, duplicating, and transmitting his communications, and the Tracking Entities intercepted and used his Sensitive Information. *Id.*

Both Plaintiffs relied on Wyze's representations and believed the Website would honor the choices they made through the cookie banner; instead, the Website continued to give Tracking Entities access to Plaintiffs' browsing activity, page interactions, navigation patterns, and identifiers for advertising and analytics purposes. Compl. ¶¶ 7–8, 48. Their visits occurred while Wyze's default pre-consent tracking configuration was active and before Wyze's February 2026 reconfiguration. Compl. ¶¶ 51, 57, 199.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "is not akin to a 'probability requirement,'" *id.*, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation marks omitted). In resolving the motion, the Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to Plaintiffs, *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), drawing all reasonable inferences in Plaintiffs' favor, *Usher v. Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). And where the parties offer competing accounts of the facts, "[i]f there are two



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363-7500 • FAX (212) 363-7171

alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Wyze's challenge to Plaintiffs' Article III standing is a facial attack under Fed. R. Civ. P. 12(b)(1): it rests entirely on the face of the Complaint rather than on extrinsic evidence. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (distinguishing facial from factual attacks). A facial attack is resolved under the same standard as a Rule 12(b)(6) motion—the Court accepts the complaint's allegations as true and draws all reasonable inferences in Plaintiffs' favor. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," because courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotation marks omitted). The standing inquiry, moreover, is a threshold jurisdictional question that must not be conflated with the merits: it "in no way depends on the merits of the [plaintiffs'] contention that particular conduct is illegal." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quotation marks omitted; alteration in original).

Rule 9(b)'s particularity requirement applies only to averments of fraud; claims that do not sound in fraud remain governed by Rule 8's ordinary notice-pleading standard. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–05 (9th Cir. 2003). Where Rule 9(b) applies, a plaintiff satisfies it by alleging "the who, what, when, where, and how of the misconduct charged." *Id.* at 1106 (quotation marks omitted). By the Rule's own terms, however, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). And the particularity requirement may be relaxed as to matters peculiarly within the defendant's knowledge. *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989).

Finally, in ruling on a motion to dismiss, the Court's review is generally "limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quotation marks



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

omitted). If the Court concludes that any claim is insufficiently pleaded, leave to amend should be granted with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003); *see also* Fed. R. Civ. P. 15(a)(2).

## ARGUMENT

### I. Plaintiffs Have Suffered Concrete Injuries, Establishing Article III Standing

The "right to privacy…. encompass[es] [an] individual's control of information concerning his or her person." *Patel v. Facebook*, *Inc.*, 932 F.3d 1264, 1273 (9th Cir. 2019). Indeed, Courts in the Ninth Circuit consistently hold that a plaintiff establishes Article III standing where a defendant misrepresents the effectiveness of tracking consent mechanisms and, without authorization, deprives consumers of control over their personal data via tracking technology such as the Tracking Tools. *See*, *e.g.*, *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026) ("[B]ecause a misrepresentation about how information would be used and the non-consensual sharing of personal information could give rise to injuries that were actionable invasions of privacy at common law, plaintiffs have sufficiently pleaded an injury-in-fact for the purposes of Article III."); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-CV-03647-JSC, 2025 WL 3268404, at *3 (N.D. Cal. Nov. 24, 2025) (similar, and stating such behavior deprived plaintiff of control of his personal information regarding his online activity, which is a concrete injury to his right to privacy sufficient for Article III standing); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 865-67 (N.D. Cal. 2025) (similar); *Vishal Shah v. Politico LLC,* No. 25-cv-05213-NW, 2026 WL 323269, at *4 (N.D. Cal. Feb. 6, 2026) (similar); *Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-cv-02282-SSS-DTBx, 2026 U.S. Dist. LEXIS 101782, at *10 (C.D. Cal. May 5, 2026) (similar).

Indeed, a week before this opposition was filed, another court in this Circuit denied a motion to dismiss on materially identical facts. In *Correia v. Lulu*, No. 3:26-cv-01186-GPC-JLB, 2026 WL 2343093 (S.D. Cal. Aug. 12, 2026), the plaintiff visited a retailer's website, was shown a cookie banner, clicked through to the settings interface, and "rejected the optional tracking



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

cookies"—after which trackers from Google, HubSpot, and Meta intercepted her search terms, products viewed, and cart activity anyway. *Id.* at *1–2. The court acknowledged, as Wyze argues here, that under *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025), the tracking of ordinary browsing data is not by itself akin to a traditionally actionable privacy harm. 2026 WL 2343093, at *3. But that principle did not control, because the defendant "affirmatively informed users they could decline or opt out of that form of information collection"—an affirmative representation that "distinguishes itself from *Popa* and creates a reasonable expectation of privacy with respect to that information." *Id.* at *3–4 (quoting *Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121, 1132 (N.D. Cal. 2025)). Collecting the information after the visitor said no is "similar in kind to a harm recognized as actionable at common law." *Id.* at *4 (quoting *Shah*, 824 F. Supp. 3d at 914); *see also Vishal Shah*, 2026 WL 323269, at *4 (opt-out option presented on arrival "giv[es] rise to an expectation of privacy").

The same reasoning governs here. Like the *Correia* plaintiff, Wheeler and Skjerven were shown a banner promising control, exercised that control by expressly declining all non-essential cookies, and were tracked anyway. Compl. ¶¶ 12–13, 44–49, 51. And the Complaint contains specific allegations on the issue that the court found decisive: it "detail[s] the tracking cookies installed, their tracking capabilities, and how they could create harm," 2026 WL 2343093, at *4—here, tool by tool, event by event, with screenshots of Wyze's live code and outbound transmissions, Compl. ¶¶ 62–176 & *Figs. 9–29*, including identifiers that resolve to visitors' actual social-media profiles, *id.* ¶¶ 69–70, 94–96. Wyze's remaining argument—that the intercepted information was not sensitive enough—goes to the merits, not to jurisdiction: "[t]he adequacy of Plaintiffs' factual allegations regarding the degree of the intrusion and sensitivity of the information goes to the merits of Plaintiffs' claims, not the threshold question of Article III standing." *In re Otter.ai Priv. Litig.*, No. 25-cv-06911-EKL, 2026 WL 2351237, at *3 (N.D. Cal. Aug. 13, 2026) (citing *Maya*, 658 F.3d 1060 at 1068). Therefore, Plaintiffs' allegations as to



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

Wyze's misrepresentations and related unauthorized tracking and disclosure of Plaintiffs' Sensitive Information satisfy Article III's concreteness requirement.

## II. Plaintiffs Have Stated a Claim Under the Wiretap Act.

### A. Plaintiffs Have Alleged Unlawful Interception.

Wyze relies on the "party defense" under 18 U.S.C. § 2511(2)(d), arguing that it qualifies as a party to the communications at issue. *See* Def.'s Mem. at 21. However, the "party defense" does not shield Wyze from liability here. The "party defense" shields only direct interceptors, not procurers. *See Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 925-26 (D. Minn. 2024) (citing *Reynolds v. Spears*, 93 F.3d 428, 432 (8th Cir. 1996)); *see also In re Facebook Inc. Internet Tracking Litig.,* 956 F.3d 589, 608 (9th Cir. 2020). Here, Plaintiffs allege Wyze is a procurer rather than a direct interceptor. *See*, *e.g.*, Compl. ¶¶ 12, 13, 186.

Additionally, given Plaintiffs' allegations regarding the interactions between themselves and the Tracking Tools, and Wyze's use of those Tracking Tools, the party exception does not apply under the Wiretap Act. Wyze installed the Tracking Tools on its Website, which not only sent Plaintiffs' Sensitive Information to the Tracking Entities but also to Wyze. *See* Compl. ¶¶ 12-13, 32-43, 55-56, 74-75, 100, 116-19, 132, 151-54. The third-party software owners have the capability to use the data collected for their own independent purposes and do so. *Id.* The U.S. Court of Appeals for the Ninth Circuit has held that under such circumstances, the party exception does not apply. *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 607-08. Further, the crime-tort exception still renders Wyze liable.

### B. Even If Wyze Was a Party to the Communications, Wyze Is Liable Under the Crime-Tort Exception.

Even if the Court were to find the "party defense" applicable, the statute's crime-tort exception still renders Wyze liable. Wyze procured and installed the Tracking Tools to facilitate interception of users' data by the Tracking Entities, invading Plaintiffs' privacy and violating multiple state statutes.



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363-7500 • FAX (212) 363-7171

Wyze relies on *Sussman v. ABC,* 186 F.3d 1200, 1202 (9th Cir. 1999), to argue that Plaintiffs fail to allege a criminal purpose and that the lynchpin of the crime-tort exception is "whether the purpose for the interception—its intended use—was criminal or tortious." Def.'s Mot. at 22. Indeed, Plaintiffs' claims for intrusion upon seclusion and fraud provide a basis for the crime-tort exception and show that the interceptions at issue were for a criminal and/or tortious purpose. *See In re Otter.ai Privacy Litig.*, 2026 WL 2351237, at *6 (applying crime-tort exception where defendant used plaintiffs' conversational data without their knowledge or consent to train its "machine learning systems for its own pecuniary gain"); *see also Allison v. PHH Mortg.*, No. 25-CV-05323-RFL, 2026 WL 899438, at *11 (N.D. Cal. Mar. 27, 2026) (crime-tort exception applies where defendant installed trackers on its website to track customers' sensitive information to reduce the cost of marketing). Wyze's premise—that the Tracking Entities' commercial motives negate any tortious or criminal purpose—has been repeatedly rejected by courts in this Circuit, as recently as last week. *See In re Otter.ai Privacy Litig.*, 2026 WL 2351237, at *6 (financial motive does not negate criminal or tortious intent); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025) ("[C]ommitting a tort and seeking a profit are not mutually exclusive."); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 869 (N.D. Cal. 2026) (similar). The allegations in the Complaint align with the cases above: the Tracking Entities intercepted visitors' communications and used them for purposes of their own that are independent of—and undisclosed by—the interception itself, including compiling cross-site profiles, training advertising algorithms, and selling benchmarking products to other customers. Compl. ¶¶ 43, 55-56, 69-70, 91-92, 118–19, 191, 203–04.

The two remaining cases Wyze relies upon, both from the District of Massachusetts,[2] are inapplicable here because the Ninth and First Circuits have applied the crime-tort exception differently. The 9th Circuit, led by *Sussman*, *supra*, asks whether the "intended use" of the

[2] *United States v. McHugh*, 57 F. Supp. 3d 95 (D. Mass. 2014); *Doe v. Lawrence Gen. Hosp.*, No. 25-cv-10081-NMG, 2025 WL 2808055 (D. Mass. Aug. 29, 2025).



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

interception was criminal or tortious—an inquiry focused on what the interceptor planned to do with the recording. The 1st Circuit, led by *United States v. Cassiere*, 4 F.3d 1006 (1st Cir. 1993) and *United States v. Vest*, 813 F.2d 477 (1st Cir. 1987), frames the inquiry as a burden-of-proof question, i.e., did the party invoking the exception prove that criminal or tortious intent was the primary motivation or a determinative factor? While these formulations may lead to the same result, the 9th Circuit's "intended use" framing focuses attention on the downstream use of the recording, while the 1st Circuit's formulation focuses more directly on the interceptor's motivational hierarchy at the time of the interception. Here, as explained above, Plaintiffs have sufficiently alleged "intended use" that is criminal and/or tortious. Thus, Wyze's arguments fail, and the Motion must be denied.

### C. Plaintiffs Have Alleged That Defendant Intercepted the Contents of Their Communications

Wyze's argument that Plaintiffs failed to plead the interception of the "contents" of their communications once again ignores the allegations in the Complaint. Plaintiffs allege that the Tracking Tools intercepted the contents of their communications, including detailed URLs of webpages requested and/or visited, and Plaintiffs' requests to view products. *See*, *e.g.*, Compl. ¶¶ 5, 38, 51, 55-56, 59-60, 97. These are the "contents" of Plaintiffs' communications. *See Limas v. Wayfair LLC*, No. CV 25-11185-DMG (Ex), 2026 WL 2351592, at *3 (C.D. Cal. Aug. 13, 2026) ("URLs which include[ ] the exact subpage of precise items being purchased me[e]t the definition of 'contents,' since these full-string detailed URLs could 'divulge a user's personal interests, queries, and habits[.]'") (quoting *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 605); *see also Gabriell*i, 815 F. Supp. 3d at 871 (holding that user input data, such as search queries, search terms, and descriptive URLs, are "contents"); *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 1085169, at *4-5 (N.D. Cal. Apr. 4, 2025) (holding "names, addresses, telephone numbers" and "URLs, button clicks, and viewing and cart history" plausibly constituted content because they were each information that users conveyed to the website about their "personal interests, queries, and habits[.]") (citing *In re Facebook Inc. Internet Tracking*



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363-7500 • FAX (212) 363-7171

*Litig.*, 956 F.3d at 605); *see also Wiley*, 826 F. Supp. 3d at 1135-36 (holding that "the alleged tracking of 'website interactions,' 'user input data,' 'shopping behaviors,' and potentially 'referring URLs' could convey, among other things, what users were searching" and constituted content under Section 631).

Additionally, at this stage of the proceedings, there is no requirement that Plaintiffs allege "what specific queries [p]laintiff himself inputted on the Website and what content was returned as a result." *Limas*, 2026 WL 2351592, at *3; *accord Krzyzek*, 817 F. Supp. 3d at 867 (rejecting defendant's argument that plaintiffs had to allege "which specific URLs" they visited).

The 11-year-old decision in *In re Facebook Internet Tracking Litig.,* 140 F. Supp. 3d 922 (N.D. Cal. 2015), does not control here. There, plaintiffs failed to plead "just what information of theirs was intercepted by Facebook." *Id.* at 935. In the absence of allegations regarding what information Facebook accepted, the Court generally held that the c_user and datr cookies contain only a Facebook user's unique identification information and a record of browsing history, but not contents. *Id.* Plaintiffs' allegations do not suffer from the same pleading deficiencies. *See*, *e.g.*, Compl. 184-92. Accordingly, Plaintiffs' federal Wiretap claim must advance.

## III. Plaintiffs Have Stated Claims for Common Law Fraud

To recover damages for fraud, a plaintiff must show: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Shah*, 824 F. Supp. 3d at 922 (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)); *see also Wiley*, 826 F. Supp. 3d at 1137-38. Fed. R. Civ. P. 9(b) imposes additional requirements which the Ninth Circuit has held are satisfied by pleading "the who, what, when, where, and how" of the alleged fraud. *See Vess*, 317 F.3d at 1106. Here, Wyze challenges (a) whether Plaintiffs' claims are pled with sufficient particularity, (b) whether Plaintiffs allege justifiable reliance, and (c) whether Plaintiffs adequately allege scienter. *See* Def.'s Mem. at 25-27. Notably,



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

Wyze does not contest misrepresentation, intent, or damages. *Id*. In any event, Plaintiffs' claims meet the required elements.

**A. Plaintiffs' Fraud Claims Are Pled with Sufficient Particularity**

Wyze argues that Plaintiffs' fraud claims fail for particularity because "they fail to allege when the purportedly fraudulent representations were made--alleging only that they visited the Website 'in or around November 2025,' without identifying a specific date" Def.'s Mem. at 26. In sum, Wyze concedes the 'who,' 'what,' 'where,' and 'how,' but challenges the 'when.'

The Complaint alleges that Plaintiffs Wheeler and Skjerven visited the Website in November 2025. Compl. ¶¶ 12-13. Wyze's reliance on *D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928 (N.D. Cal. 2026), is unavailing. *See* Def.'s Mem. at 26. In *D'Antonio*, the court reasoned that "Plaintiffs…adequately plead 'the who, what, when, where, and how' of [defendant's] alleged misrepresentations. Both allege that in or around November 2024 and February 2025, respectively, they visited [defendant's] website and were immediately shown the pop-up cookie consent banner that represented that they could decline all cookies by clicking 'Reject All.' This representation was allegedly false because [defendant] in fact tracked plaintiffs' activity using cookies and transmitted their data to third parties. These allegations are sufficient to provide [defendant] with 'adequate notice' of the fraud alleged." *Id.* at 937-38. Here, each Plaintiff alleges the month and year of their most recent visit to the Website, which is sufficient to establish the 'when' under Fed. R. Civ. P. 9(b). *Id.*; *see also Pemberton*, 2025 WL 3268404, at *21-22. Thus, Plaintiffs' fraud claims are pled with sufficient particularity.

**B. Plaintiffs Have Adequately Alleged Scienter**

Wyze next argues that "Plaintiffs also fail to allege sufficient facts to establish that Wyze made a *knowingly* false statement." Def.'s Mem. at 26. Wyze continues:

> The Complaint offers only speculation as to what Wyze *could have* known or *could have* done regarding the alleged malfunction of the preferences window. Compl. ¶ 268. Plaintiffs merely allege that Wyze had the technical ability to prevent post-opt-out data transmission, but they do not allege that Wyze actually used those



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

> tools, discovered any defect, or otherwise knew that the preferences mechanism was allegedly not functioning as intended.

*Id.* at 26-27 (emphasis in original). However, the allegations establishing a plausible inference that Wyze knew of its own misrepresentations are not limited to ¶ 268, as Wyze argues. The Complaint explains, in detail, the process by which each Tracking Tool must be implemented on the Website and the terms Wyze must agree to prior to implementation of each Tracking Tool. *See* Compl. ¶¶ 62-85 (TikTok Pixel), 86-109 (Meta Pixel), 110-24 (Google Ads and Analytics), 125-39 (Twitter Pixel), 140-64 (Snap Pixel), 165-76 (Bazaarvoice Pixel). Wyze's position asks the Court to infer that Wyze neither read the contracts it entered into with the Tracking Entities nor understood how it had configured the Tracking Tools, even though those tools transmitted users' Sensitive Information regardless of their privacy elections. Those arguments are insufficient to defeat the inference of knowledge established by Plaintiffs' well-pled allegations. Indeed, Wyze's unsubstantiated argument raises a factual dispute that cannot be resolved at the pleadings stage. *See Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 225 F. Supp. 3d 1034, 1040 (N.D. Cal. 2016) ("Knowledge, like the other elements of fraud, is a question of fact and like any other fact, it may be proved by circumstantial evidence.") (internal quotation marks omitted). In any event, "proof indicative of fraud may be given by inference, by circumstances surrounding the transaction, and the relationship and interest of the parties." *Id.* Additionally, courts have found intent when Plaintiffs pled similar facts. *See Gabrielli*, 815 F. Supp. 3d at 873; *see also Pemberton*, 2025 WL 3268404, at *21-22. Notwithstanding that Plaintiffs are not required to prove their claims at the pleadings stage, Plaintiffs' allegations establish a reasonable inference of Wyze's knowledge and intent.

### C. Plaintiffs Have Adequately Alleged Justifiable Reliance

Wyze next argues that Plaintiffs cannot allege justifiable reliance "because they do not "allege that []he read and relied on a specific misrepresentation." Def.'s Mem. at 27 (quoting *Haskins v. Symantec Corp.*, 654 F. Appx. 338, 339 (9th Cir. 2016)). But the allegations in the Complaint make clear that Plaintiffs were exposed to Wyze's misrepresentation that their



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

Sensitive Information would not be sold/shared to third parties without their affirmative consent, and that they acted upon that misrepresentation by continuing to use the Website and its services. *See*, *e.g.*, Compl. ¶¶ 7, 12, 13; *see also Vishal Shah,* 2026 WL 323269, at *8 (finding justifiable reliance when the plaintiff continued browsing on the website in reliance on the cookie banner). Thus, Plaintiffs have adequately pled that their exposure to Wyze's misrepresentations gave rise to their justifiable reliance.

## IV. Plaintiffs Have Stated Claims for Intrusion Upon Seclusion

### A. Plaintiffs Have Alleged That Defendant Intruded Upon Their Seclusion.

To plead intrusion upon seclusion on Washington common law, a plaintiff must allege that the defendant (1) deliberately intruded; (2) into the plaintiff's solitude, seclusion, or private affairs; (3) in a manner that would be highly offensive to a reasonable person. *See Armijo v. Yakima HMA, LLC*, No. 11-CV-3114-TOR, 2012 WL 2576624, at *2 (E.D. Wash. July 3, 2012).[3] Plaintiffs satisfy all elements.

Here, Defendant created a reasonable expectation of privacy as to Plaintiffs' Sensitive Information by representing to Plaintiffs that they could control what information was shared with the Tracking Entities. *See Correia*, 2026 WL 2343093, at *4 (informing users they could decline or opt out of that form of information sharing creates a reasonable expectation of privacy with respect to that information); *see also Shah*, 824 F. Supp. 3d at *4 (same).

Defendant relies on *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072 (W.D. Wash. 2024), to argue that no intrusion occurred and that Plaintiffs had no reasonable expectation of privacy because they voluntarily shared their information with the Website. This reliance is misplaced. *Nienaber* is distinguishable because the defendant in that case did not misrepresent its data collection and sharing practices through its cookie settings, thereby inducing plaintiffs to interact with the website under a false sense of security. Here, Plaintiffs affirmatively ***chose not***

[3] Intrusion Upon Seclusion in California also requires that a plaintiff show a reasonable expectation of privacy and conduct that is "highly offensive." *See also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601(same).



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363-7500 • FAX (212) 363-7171

***to disclose*** their information to any third party through the use of cookies. *See Poore-Rando v. United States*, No. C16-5094 BHS, 2017 WL 5756871 (W.D. Wash. Nov. 28, 2017) ("[A]n actor commits an intentional intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act.").

Defendant's intrusion was highly offensive. *See Gilligan v. Experian Data Corp.*, No. 25-CV-02873-RFL, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (finding the unauthorized, widespread tracking and data collection used to compile detailed profiles of each plaintiff's online browsing activity, tied to their email address and other personal identifiers, allowing defendant to track "future web browsing activity across the internet," was highly offensive); *see also* Compl. ¶¶ 43, 55-56, 69-70, 91-92, 118–19, 191, 203–04.

Nonetheless, whether Defendant's tracking and disclosure practices would highly offend a reasonable person cannot be resolved at the pleading stage. *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 606 ("the ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage"); *Gabrielli,* 815 F. Supp. 3d at 868 ("I cannot, at this early stage, conclude as a matter of law that the alleged transmission via stored cookies of [plaintiff's] browsing data, visit history, website interactions, geolocation information, user input data (including search terms), and other types of data is not a highly offensive").

The cases Wyze cites to support its argument that Defendant's intrusion is not "highly offensive" are not only inapposite to the facts here but actually support Plaintiffs' position on this issue.[4] Indeed, Wyze misstates the very holding of *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) (*see* Def.'s Mot. at 28), a case that in fact undercuts, rather than supports, Defendant's position. There, the court states that a "jury ***could*** conclude that this intrusion, which allegedly allowed [the tracking entity] to associate *Revitch's* browsing habits with his identity, ***is a highly offensive breach of norms***." *Id.* at *3

[4] As stated in Section III(A), Plaintiffs satisfy 9(b)'s pleading requirements.



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

(emphasis added).[5] Moreover, Wyze's authority is foreclosed by the fact that, again, these cases do not involve false promises that users' data would not be tracked and disclosed in specific ways. *See D'Antonio*, 820 F. Supp. 3d at 935 (finding defendant's misrepresentations concerning plaintiffs' ability to control what information was shared amounted to a "***deceit plus factor***" necessary to support plaintiffs' claim of a highly offensive intrusion) (emphasis added); *cf. Saeedy v. Microsoft Corp.*, No. 23-cv-1104, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (Def.'s Mot. at 28-29) (plaintiffs did not allege that [defendant] broke its promises). *Saeedy* is further distinguished by the fact that "[p]laintiffs [did] not allege that their data was either disclosed or sold to a third party." 2023 WL 8828852, at *5. Accordingly, because Plaintiffs had a reasonable expectation of privacy in their Sensitive Information, and because Defendant's intrusion is highly offensive, Plaintiffs' claim for intrusion upon seclusion must advance.

## <u>CONCLUSION</u>

For the foregoing reasons, Wyze's Motion should be denied. Should the Court grant Wyze's Motion, Plaintiffs respectfully request leave to amend. *See Roney v. Miller*, 705 F. Appx. 670, 671 (9th Cir. 2017). Here, the amendment would not be futile. Given the highly technical nature of the Tracking Tools at issue in this action, Plaintiffs could provide additional details related to Wyze's procurement, deployment, and use of the tools.

//

//

//

[5] Defendant's citation to *Revitch* for the contention that there is "no reasonable expectation of confidentiality in communications inquiring about items of clothing on a retail website" was made in regard to plaintiffs' CIPA § 632 claim, not a claim for intrusion upon seclusion.



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171

Dated: August 19, 2026

By: */s/ Mark S. Reich*
Mark S. Reich*
mreich@zlk.com
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

By: */s/ Kim D. Stephens, P.S.*
By: */s/ Rebecca L. Solomon*
Kim D. Stephens, P.S., WSBA #11984
kstephens@tousley.com
Rebecca L. Solomon, WSBA #51520
rsolomon@tousley.com
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
Telephone: (206) 682.5600
Facsimile: (206) 682.2992

*admitted *pro hac vice*

*Attorneys for Plaintiffs and the Proposed Class*

I certify that this memorandum contains 6,414 words, in compliance with the Local Civil Rules.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on Defendant via CM/ECF electronic notice.

*/s/ Mark S. Reich*
Mark S. Reich

*Counsel for Plaintiffs*



LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, New York 10004
TEL. (212) 363.7500 • FAX (212) 363-7171